**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.   **ED CV 25-2341-JFW(AS)** | Date:  February 19, 2026 |
| Title:   Juan Hernandez Colis -v- F. Semaia, et al. | |

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly**<br>**Courtroom Deputy** | **None Present**<br>**Court Reporter** |

| | |
|---|---|
| **ATTORNEYS PRESENT FOR PLAINTIFFS:**<br>None | **ATTORNEYS PRESENT FOR DEFENDANTS:**<br>None |

**PROCEEDINGS (IN CHAMBERS):**    ORDER DENYING PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [filed 2/3/26; Docket No. 11]

      On February 3, 2026, Petitioner Juan Hernandez Colis ("Petitioner") filed an Application for Temporary Restraining Order ("Application").  On February 5, 2026, Respondents F. Semaia ("Semaia"), Todd M. Lyons ("Lyons"), Kristi Noem ("Noem"), Pam Bondi ("Bondi") (collectively, "Respondents") filed their Opposition.  On February 9, 2026, Petitioner filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for  February 23, 2026, is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.**  **Factual and Procedural Background**

      Petitioner is a 54-year-old Mexican citizen who was born on June 10, 1971, in the State of San Luis Potosi, Mexico.  Petitioner has unlawfully entered the United States four different times, with the last time being on approximately March 21, 2021.  Petitioner has spent over thirty years of his adult life in the United States.

      On September 29, 1994, Petitioner was convicted of transportation of a controlled substance in violation of California Health and Safety Code § 11352(a), and Petitioner received a sentence of probation.  On June 13, 1995, the San Diego Superior Court ("SDSC") issued a bench warrant for Petitioner's arrest after he failed to report to his probation officer.

      On May 18, 1999, Petitioner was convicted of assault on a female in violation of North Carolina General Statute § 14-33(c)(2).

On August 3, 2014, the Charlotte Mecklenburg Police Department arrested Petitioner after a warrant was issued for misdemeanor non-support of a child. On that same day, the United States Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act § 212(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled.

On April 23, 2015, SDSC recalled Petitioner's bench warrant and then reinstated and immediately terminated Petitioner's probation. SDSC then granted the district attorney's motion to dismiss the case against Petitioner.

On June 9, 2015, Petitioner applied for cancellation of removal. One of the requirements for cancellation of removal is that the alien has not been convicted of a controlled substance offense under the Immigration and Nationality Act § 212(a)(2)(A)(ii). On October 27, 2015, the Immigration Judge found that notwithstanding the dismissal of Petitioner's 1994 conviction for transportation of a controlled substance, that conviction still qualified as a conviction under the Immigration and Nationality Act. Specifically, the Immigration Judge found that Petitioner failed to meet his burden of demonstrating that the conviction was vacated due to procedural or substantive defects in the underlying criminal proceeding. As a result, the Immigration Judge concluded that Petitioner was ineligible for cancellation of removal and ordered Petitioner removed to Mexico.

On August 13, 2020, Petitioner was detained by ICE based on his conviction for impaired driving. On September 21, 2020, ICE executed Petitioner's removal order by physically removing him to Mexico.

After his removal, Petitioner began to receive threats and became the victim of an extortion scheme. His sister and her family, including United States citizen children, went to visit Petitioner's parents in San Luis Potosi, Mexico. During their visit, armed men entered the house, demanded the keys to a 2015 Cadillac Escalade, took money, iPads, and cell phones while pointing a gun to Petitioner's father's head in front of his grandchildren. After the intruders left, they kept calling Petitioner's parents' house, demanding the title and registration to the Escalade. Once the intruders learned that Petitioner had returned to his parents' house, the threats intensified towards Petitioner, with the intruders demanding money in United States dollars and threatening to kidnap Petitioner.

In March 2021, afraid for his life and the lives of his elderly parents, Petitioner fled to the United States. He was detained and prosecuted for illegal reentry in the Southern District of Texas. On April 16, 2022, Petitioner was transferred to immigration detention. After Petitioner was transferred to immigration detention, he claimed a fear of returning to Mexico. On April 19, 2022, Petitioner was referred for a reasonable fear interview before an asylum officer to determine whether he had a colorable claim. Because the asylum officer initially determined that Petitioner did not have a reasonable fear of persecution in Mexico, Petitioner requested a review of his reasonable fear interview by an Immigration Judge. On May 17, 2022, an Immigration Judge reversed the asylum officer's decision and Petitioner was put in removal proceedings. As a result of the Immigration Judge finding that Petitioner had a reasonable fear of persecution in Mexico, Petitioner was allowed to submit an application for asylum and remain in the United States while his application was pending.

On May 31, 2022, Petitioner retained an immigration attorney. On June 11, 2022, Petitioner filed his Application for Asylum and for Withholding of Removal (Form I-589) ("Asylum Application"). On July 18, 2022, Petitioner was released from immigration detention in Laredo, Texas on an Order of Supervision ("OSUP").

On May 17, 2025, Petitioner was redetained by ICE in Charlotte, North Carolina without any notice or hearing. At the time of his detention, Petitioner was living in Charlotte, North Carolina, and had a hearing scheduled in his asylum case for August 14, 2025, at the Charlotte Immigration Court. According to Petitioner, in the nearly three years he had been on an OSUP, he had complied with all of his release requirements and continued to document his asylum case through his immigration attorney.

On May 17, 2025, after he was redetained, ICE transported him to the Stewart Detention Center in Lumpkin, Georgia. On May 22, 2025, ICE transferred Petitioner to the Folkston ICE Processing Center in Folkston, Georgia. On June 8, 2025, Petitioner was transferred to the Adelanto ICE Processing Center ("Adelanto") in Adelanto, California.

On September 12, 2025, an Immigration Judge denied Petitioner's Asylum Application. On October 2, 2025, Petitioner filed an appeal before the Board of Immigration Appeal, and the appeal is presently pending.

Petitioner lives in Charlotte, North Carolina with his family and his children are United States citizens. Petitioner suffers from multiple health conditions, including diabetes, hyperlipidemia, hyperthyroidism, and intermittent moderate to severe shooting pain in his left leg. Since being redetained, Petitioner is also experiencing several mental health issues, including lack of sleep, sadness, anxiety, irritability, hopelessness, constant worry and crying, and weight loss. Prior to his redetention, Petitioner had been taking medication prescribed by his doctor to control his diabetes. During his detention, Petitioner has not been allowed to take his prescribed medication and, instead, has been receiving insulin injections and other pills. Prior to his detention, Petitioner was also taking medication prescribed by his doctor for his hyperthyroidism. During his detention, Petitioner has not been allowed to take his prescribed medication and is not currently receiving any medication for this condition.

In addition, during his detention, Petitioner has been experiencing increasing pain in his legs and a "sticky eye" condition in his left eye. As a result of his eye condition, Petitioner has started to lose the vision in his left eye, his eye is constantly leaking blood and water, and he feels pain in his eye. Petitioner believes that his leg pain and sticky eye condition are related to his diabetes and the lack of proper medication for that condition. Petitioner has been told to buy Tylenol from the commissary for his leg pain. On September 2, 2025, Petitioner was taken to a hospital where he was examined and advised that he will probably require surgery with respect to the liquid leaking from his left eye and that he may lose that eye. Although Petitioner has been scheduled for outpatient treatment with respect to his eye on multiple occasion, he has not yet received any treatment because either the proper appointment was not made by the staff at Adelanto, he was unable to be seen because he was taken to the appointment several hours late, or the deportation officer accompanying him to the appointment failed to bring the necessary paperwork.

### B. Procedural History

On September 9, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") against Respondents, alleging claims for relief for: (1) violation of Fifth Amendment Due Process; (2) violation of 8 U.S.C. § 1226(a)-(b); and (3) violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"). On September 25, 2025, Respondents filed their Response to Petitioner's Petition. On October 2, 2025, Petitioner filed a Traverse. On October 2 and 16, 2025, Petitioner filed Supplements to his Traverse.

## II. Legal Standard

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc*., 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id.* (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp*., 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### III. Discussion

In his Application, Petitioner seeks an Order from this Court: (1) ordering Respondents to immediately release Petitioner from custody and placing him on an OSUP; (2) enjoining Respondents from detaining, re-detaining, or taking into custody Petitioner unless and until they follow all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(l), and any other applicable statutory or regulatory procedures; and (3) ordering Respondents to show cause before this Court why a preliminary injunction should not issue, granting the same or similar relief.

In this case, the Court concludes that Petitioner has not met his burden to establish that he is likely to succeed on the merits, or to show serious questions going to the merits, of his claims. *Winter*, 555 U.S. at 22. In his Application, Petitioner relies heavily on his argument that he had not been given a bond hearing and that no individualized determination that Petitioner was a flight risk had been made. However, Respondents argue, and Petitioner does not deny, that Petitioner was provided with a *Rodriguez* bond hearing for prolonged detention on January 5, 2026, and the Immigration Judge found that Petitioner is a flight risk. In addition, Petitioner has failed to demonstrate why the appropriate injunctive relief for the purported lack of proper medical care requires his release from ICE detention rather than relief that is more narrowly tailored in scope.

In addition, although Petitioner filed his Petition on September 7, 2025, Petitioner fails to explain why he is only now – nearly five months later – seeking injunctive relief. Petitioner's delay in seeking relief demonstrates a lack of urgency and irreparable harm and weighs heavily against granting a temporary restraining order or preliminary injunction. *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief"); *Hi-Rise Technology, Inc. v. Amateurindex.com*, 2007 WL 1847249, at * 4 (W.D. Wash. June 27, 2007) ("Such a long delay in seeking relief weights against granting a temporary restraining order or a preliminary injunction."). Moreover, Petitioner's Petition has been fully briefed for over four months, and the Court is confident that the Magistrate Judge will promptly adjudicate the merits of Petitioner's claims.

### IV. Conclusion

For all the foregoing reasons, Petitioner's Application is **DENIED**.

IT IS SO ORDERED.